## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

WHITNEY MARIE HOUSE,

     Plaintiff,

-vs-

     Case No.

EQUIFAX INFORMATION SERVICES
LLC; EXPERIAN INFORMATION
SOLUTIONS, INC.; TRANS UNION
LLC; and LENDMARK FINANCIAL
SERVICES, LLC,

     Defendants.

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiff, WHITNEY MARIE HOUSE (hereinafter "Plaintiff"), by and through her undersigned counsel, for her cause of action against Defendants, EQUIFAX INFORMATION SOLUTIONS, INC. (hereinafter "Experian"); TRANS UNION LLC (hereinafter "Trans Union"); and LENDMARK FINANCIAL SERVICES, LLC (hereinafter "Lendmark") (hereinafter collectively "Defendants"), and in support thereof respectfully alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*

## PRELIMINARY STATEMENT

1.    This is an action for actual damages, statutory damages, punitive damages, costs, and attorney's fees brought pursuant to the FCRA.

2.      Today in America there are three major consumer reporting agencies, Equifax Information Services LLC (hereinafter "Equifax"), Trans Union LLC (hereinafter "Trans Union"), and Experian Information Solutions, Inc. (hereinafter "Experian") (hereinafter collectively "CRAs").

3.      Consumer reporting agencies that create consumer reports, Experian and Trans Union, are charged with using reasonable procedures designed to ensure the maximum possible accuracy of the information they report. It is not enough for them to simply parrot information they receive from entities, particularly where a consumer makes a dispute about information reported.

4.      When a consumer like Plaintiff disputes information through the agencies, those disputes are transmitted to the party furnishing the information. The FCRA demands that each party separately conduct a reasonable investigation of the consumer's dispute and correct or delete information they learn to be inaccurate or cannot otherwise verify.

5.      The Consumer Financial Protection Bureau has noted, "experience indicates that [Credit Reporting Agencies] lack incentives and under-invest in accuracy". Consumer Fin. Prot. Bureau, Supervisory Highlights Consumer Reporting Special Edition 21 (Issue 14, March 2, 2017).

## JURISDICTION AND VENUE

6.      Jurisdiction for this Court is conferred by 28 U.S.C. § 1331, as this action involves violations of the FCRA.

2

7.    Venue is proper for this Court pursuant to 28 U.S.C. § 1391(b)(2), as this is the judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

8.    Venue is proper in this District as Plaintiff is a natural person and resident of Polk County in the State of Florida; Defendants transact business within this District; and violations described in this Complaint occurred in this District.

9.    Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c).

10.    Experian is a corporation with its principal place of business in the State of California and is authorized to do business in the State of Florida through its registered agent, C T Corporation System, located at 1200 South Pine Island Road, Plantation, Florida 33324.

11.    Experian is a "consumer reporting agency," as defined in 15 U.S.C. § 1681(f). Experian is regularly engaged in the business of assembling, evaluating and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681(d) to third parties.

12.    Experian disburses such consumer reports to third parties under contract for monetary compensation.

13.    Trans Union is a corporation with its principal place of business in the State of Illinois and is authorized to do business in the State of Florida through its registered agent, Corporation Service Company, located at 1201 Hays Street, Tallahassee, Florida 32301.

14.    Trans Union is a "consumer reporting agency," as defined in 15 U.S.C. § 1681(f). Trans Union is regularly engaged in the business of assembling, evaluating and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681(d) to third parties.

15.    Trans Union disburses such consumer reports to third parties under contract for monetary compensation.

16.    Lendmark is a corporation with its principal place of business in the State of Georgia and is authorized to do business in the State of Florida through its registered agent, C T Corporation System, located at 1200 South Pine Island Road, Plantation, Florida 33324.

17.    Lendmark is a "furnisher of information" as that term is used in 15 U.S.C § 1681s-2.

18.    Lendmark furnished information about Plaintiff to Experian and Trans Union that was inaccurate.

## FACTUAL ALLEGATIONS

19.    Plaintiff is alleged to owe a debt to Lendmark, partial account number 254012*, as to a secured loan (hereinafter "Lendmark Account"). Plaintiff does not have an account with Lendmark and never applied or gave permission to anyone to apply using her information for the Lendmark Account.

20.    Upon information and belief, Plaintiff is a victim of identity theft.

4

21.    In or about December 2024/January 2025, Plaintiff started to receive credit card applications and became aware of loan that was fraudulently.

22.    Thereafter, Plaintiff started to receive phone calls from Zillow regarding applications she did not submit.

23.    Shortly thereafter, Plaintiff reviewed her credit reports and observed accounts, including but limited to the Lendmark Account, and personal identifying information, including but not limited to phone numbers and addresses, which did not belong to her.

24.    On or about January 9, 2025, Plaintiff submitted a dispute through her Credit Karma Account to Trans Union regarding the fraudulent Lendmark Account.

25.    On or about January 25, 2025, Plaintiff received dispute results from Trans Union which stated the dispute of the Lendmark Account was denied and continued to report the fraudulent Lendmark Account.

26.    Trans Union failed to do any independent investigation into Plaintiff's disputes, but rather parroted information it received from the furnisher.

27.    Trans Union never attempted to contact Plaintiff during the alleged investigation.

28.    Upon information and belief, Trans Union notified Lendmark of Plaintiff's dispute. However, Lendmark failed to conduct a reasonable investigation and merely compared its own erroneous data to that provided by Trans Union in connection with the dispute investigation.

29.    On or about February 26, 2025, Plaintiff submitted a second dispute through her Credit Karma Account to Trans Union regarding the fraudulent Lendmark Account.

30.    On or about March 22, 2025, Plaintiff received dispute results from Trans Union which stated the dispute of the Lendmark Account was denied and continued to report the fraudulent Lendmark Account.

31.    Trans Union failed to do any independent investigation into Plaintiff's disputes, but rather parroted information it received from the furnisher.

32.    Trans Union never attempted to contact Plaintiff during the alleged investigation.

33.    Upon information and belief, Trans Union notified Lendmark of Plaintiff's dispute. However, Lendmark failed to conduct a reasonable investigation and merely compared its own erroneous data to that provided by Trans Union in connection with the dispute investigation.

34.    Thereafter, Plaintiff submitted another dispute to Trans Union regarding the fraudulent Lendmark Account.

35.    Plaintiff received dispute results from Trans Union stated the Lendmark Account was verified as accurate.

36.    Trans Union failed to do any independent investigation into Plaintiff's disputes, but rather parroted information it received from the furnisher.

37. Trans Union never attempted to contact Plaintiff during the alleged investigation.

38. Upon information and belief, Trans Union notified Lendmark of Plaintiff's dispute. However, Lendmark failed to conduct a reasonable investigation and merely compared its own erroneous data to that provided by Trans Union in connection with the dispute investigation.

39. Further, in early 2025, Plaintiff also contacted Experian regarding the erroneous Lendmark Account.

40. Plaintiff did not receive dispute results from Experian. However, Plaintiff obtained an updated copy of her Experian credit report, and upon review, observed the Lendmark Account continued to be reported with a comment which stated, "Completed investigation of FCRA dispute – consumer disagrees".

41. Experian failed to do any independent investigation into Plaintiff's disputes, but rather parroted information it received from the furnisher.

42. Experian never attempted to contact Plaintiff during the alleged investigation.

43. Upon information and belief, Experian notified Lendmark of Plaintiff's dispute. However, Lendmark failed to conduct a reasonable investigation and merely compared its own erroneous data to that provided by Experian in connection with the dispute investigation.

44.    On or about March 3, 2025, Plaintiff filed a police report with the Auburndale Police Department, report number 24-1978, regarding the fraud and identity theft.

45.    On or about April 11, 2025, Plaintiff learned that an unknown female was using a Florida Driver's License with personal identifying information identical to Plaintiff's with the only difference being the photo.

46.    On or about April 14, 2025, Plaintiff obtained copies of her Experian and Trans Union credit reports. Upon review, Plaintiff observed personal identifying information, including but not limited to addresses and phone numbers, and four (4) hard inquiries, which did not belong to her. Further, Plaintiff observed the following accounts which did not belong to her and were fraudulent.

| **Furnisher** | **CRA** | **Account** | **Status** |
|---|---|---|---|
| EDC/Axiom Prop | Experian | 11263Y* | Rental, Original balance $1,610 |
| EDC/Real Prop. Mang. | Experian | 1950Y5* | Rental, Original balance $1,400 |
| EDC/Red Hawk Property | Experian | 1499Y1* | Rental, Original balance $2,200 |
| Hunter Warfield on behalf of Treo Apts. | Experian, Trans Union | 990816* | Collection, Balance $210 |
| Lendmark | Experian, Trans Union | 254012* | Past due, balance $6,961 |

47.    Plaintiff has owned and lived in a home, which is her current Florida address, with her husband and children for approximately seven (7) years.

48.    Due to the inaccurate reporting, on or about April 22, 2025, Plaintiff mailed a detailed dispute letter to Experian and Trans Union. In the letter, Plaintiff advised she was a victim of identity theft and that the aforementioned accounts did not

belong to her. To confirm her identity, Plaintiff included images of her driver's license and recent tax bill in the letter. Further, Plaintiff provided images of the erroneous reporting, images of the police report filed with the Auburndale Police Department, and other supporting documents.

49.    Plaintiff mailed her detailed dispute letter via USPS Certified Mail to Experian (9407 1112 0620 8853 8962 08) and Trans Union (9407 1112 0620 8853 8969 63).

50.    On or about May 6, 2025, Plaintiff received dispute results from Experian which stated the Lendmark Account was verified and remains.

51.    Later that same day, Plaintiff received dispute results from Experian which stated the Lendmark Account was deleted.

52.    Despite confirmation of delivery, Plaintiff did not receive dispute results from Experian regarding the other accounts which were disputed.

53.    However, on or about May 29, 2025, Plaintiff obtained an updated copy of her Experian credit report. Upon review, Plaintiff observed that two (2) addresses which did not belong to her continued to be reported. Further, Plaintiff observed that EDC/Red Hawk Property, partial account number 1499Y1*, continued to be reported. To her relief, all the other disputed accounts were no longer reporting.

54.    Experian failed to do any independent investigation into Plaintiff's disputes, but rather parroted information it received from the furnisher(s).

9

55.     Experian never attempted to contact Plaintiff during the alleged investigation.

56.     Despite confirmation of delivery on April 29, 2025, Plaintiff did not receive dispute results in the mail from Trans Union.

57.     However, on or about May 29, 2025, Plaintiff obtained updated copies of her Trans Union credit report. Upon review, Plaintiff observed the Trans Union continued to report the four (4) hard inquiries and one (1) address which did not belong to her. To her relief, Trans Union removed the Lendmark Account and Hunter Warfield, partial account number 990816*.

58.     Trans Union failed to do any independent investigation into Plaintiff's disputes and never attempted to contact Plaintiff during the alleged investigation.

59.     Due to the continued inaccurate reporting, on or about May 29, 2025, Plaintiff mailed a second detailed dispute letter to Experian and Trans Union. In the letter, Plaintiff reiterated she was a victim of identity theft and that Experian continued to report the fraudulent EDC/Red Hawk Property, partial account number 1499Y1*, and addresses which did not belong to her. Additionally, Plaintiff advised that Trans Union continued to report the four (4) hard inquiries and one (1) address which were erroneous and did not belong to her. To confirm her identity, Plaintiff included images of her driver's license and recent tax bill in the letter. Further, Plaintiff provided images of the erroneous reporting, images of the police report filed with the Auburndale Police Department, and other supporting documents.

60.    Plaintiff mailed her second detailed dispute letter via USPS Certified Mail to Experian (9407 1112 0549 5822 8056 57) and Trans Union (9407 1112 0549 5822 8056 64).

61.    Despite Plaintiff's best efforts to have the erroneous reporting corrected, Experian and Trans Union continue to inaccurately report the erroneous and fraudulent accounts, personal identifying information, and hard inquiries in Plaintiff's credit file. Accordingly, Plaintiff's damages are ongoing as of the filing of this Complaint.

62.    Experian and Trans Union have not conducted an actual investigation despite Plaintiff's pleas, and upon information and belief, simply continue to parrot off the back of the furnisher(s).

63.    Plaintiff continues to suffer as of the filing of this Complaint with Defendants' reluctance to conduct a thorough investigation into her disputes or otherwise make her credit file accurate.

64.    As a result of the inaccurate credit reporting, Plaintiff has suffered damages, including, but not limited to:

    i.    Monies lost by attempting to fix his credit. Plaintiff has suffered actual damages in postage paid, wasted ink and paper, wasted time, and lost wages due to missing work in attempts to cure the reporting errors;

    ii.    Loss of time attempting to cure the errors;

    iii.    Mental anguish, added stress, aggravation, embarrassment, emotional distress, sleepless nights, headaches, fluctuations in weight, and other

11

related impairments to the enjoyment of life; Plaintiff is being

physically affected by Defendants' actions;

iv.    Apprehensiveness to apply for new credit due to the fear of rejection;

and

v.    Defamation as Defendants published inaccurate information to third

party entities.

## CAUSES OF ACTION

### COUNT I
**Violation of 15 U.S.C. § 1681e(b) as to
Defendant, Experian Information Solutions, Inc. (Negligent)**

65.    Plaintiff re-alleges and incorporates paragraphs one (1) through sixty-four

(64) above as if fully stated herein.

66.    Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow

reasonable procedures to assure maximum possible accuracy in the preparation of the

credit report and credit files it published and maintains concerning Plaintiff.

67.    Experian allowed for furnisher(s) to report inaccurate and erroneous

accounts and information to Plaintiff's credit file.

68.    Upon information and belief, Experian does not allow its representatives

to call consumers, like Plaintiff, during the dispute process or call witnesses with

knowledge about the dispute.

69.    Experian selects to just parrot the information provided by the Furnisher

and to avoid conducting re-investigations.

70.     Experian chooses the illegitimate parroting of information despite consumers (like Plaintiff) providing ample evidence.

71.     Experian violated its own policies and procedures by not deleting account(s) when Plaintiff provided them with the police report filed with the Auburndale Police Department, which contained sworn testimony of the fraud.

72.     As a result of this conduct, action, and inaction of Experian, Plaintiff suffered damage, including without limitation, loss of the ability to benefit from lower interest rates; loss of time; financial loss; physical injury; emotional distress; and mental and emotional pain stemming from the stress, anguish, humiliation, and apprehension in applying for credit and the damages otherwise outlined in this Complaint.

73.     The conduct, action, and/or inaction of Experian was negligent, rendering it liable for actual damages, in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

74.     Plaintiff is entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff, WHITNEY MARIE HOUSE, respectfully requests that this Court award actual damages against Defendant, EXPERIAN INFORMATION SOLUTIONS, INC.; award Plaintiff her attorney's fees and costs; award pre-judgment and post-judgment interest at the legal rate; enjoinder from further violations of these parts; and such other such relief the Court may deem just and proper.

## COUNT II
### Violation of 15 U.S.C. § 1681e(b) as to
### Defendant, Experian Information Solutions, Inc. (Willful)

75.     Plaintiff re-alleges and incorporates paragraphs one (1) through sixty-four (64) above as if fully stated herein.

76.     Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning Plaintiff.

77.     Experian allowed for furnisher(s) to report inaccurate and erroneous accounts and information to Plaintiff's credit file.

78.     Upon information and belief, Experian does not allow its representatives to call consumers, like Plaintiff, during the dispute process or call witnesses with knowledge about the dispute.

79.     Experian selects to just parrot the information provided by the Furnisher and to avoid conducting re-investigations.

80.     Experian chooses the illegitimate parroting of information despite consumers (like Plaintiff) providing ample evidence.

81.     Experian violated its own policies and procedures by not deleting account(s) when Plaintiff provided them with the police report filed with the Auburndale Police Department, which contained sworn testimony of the fraud.

82.     As a result of this conduct, action, and inaction of Experian, Plaintiff suffered damage, including without limitation, loss of the ability to benefit from lower

interest rates; loss of time; financial loss; physical injury; emotional distress; and mental and emotional pain stemming from the stress, anguish, humiliation, and apprehension in applying for credit and the damages otherwise outlined in this Complaint.

83.    The conduct, action, and/or inaction of Experian was willful, rendering it liable for actual or statutory damages and punitive damages, in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

84.    Plaintiff is entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

WHEREFORE, Plaintiff, WHITNEY MARIE HOUSE, respectfully requests that this Court award actual or statutory damages and punitive damages against Defendant, EXPERIAN INFORMATION SOLUTIONS, INC.; award Plaintiff her attorney's fees and costs; award pre-judgment and post-judgment interest at the legal rate; enjoinder from further violations of these parts; and such other such relief the Court may deem just and proper.

## COUNT III
### Violation of 15 U.S.C. § 1681i as to
### Defendant, Experian Information Solutions, Inc. (Negligent)

85.    Plaintiff re-alleges and incorporates paragraphs one (1) through sixty-four (64) above as if fully stated herein.

86.    After receiving Plaintiff's disputes, Experian violated 15 U.S.C. § 1681i by: (i) failing to delete inaccurate information in Plaintiff's credit file after receiving notice of such inaccuracies; (ii) failing to conduct a lawful and reasonable

reinvestigation into Plaintiff's disputes; (iii) failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file; (iv) failing to review and consider all relevant information submitted by Plaintiff in the disputes; and (v) relying upon verification from a source it has to know is unreliable.

87.     Despite the large amount of information and documentation produced by Plaintiff demonstrating the inaccurate reporting, Experian failed to conduct independent investigations into Plaintiff's disputes and simply transferred the duty to investigate to the furnisher(s).

88.     Plaintiff provided Experian with the information it needed to confirm that she was a victim of identity theft. Experian ignored this information and failed to conduct a thorough investigation into her disputes or otherwise make her credit file accurate.

89.     As a direct result of this conduct, action and/or inaction of Experian, Plaintiff suffered damage, including without limitation, loss of the ability to benefit from lower interest rates; loss of time; financial loss; physical injury; emotional distress; and mental and emotional pain stemming from the stress, anguish, humiliation, and apprehension in applying for credit and the damages otherwise outlined in this Complaint.

90.     The conduct, action, and/or inaction of Experian was negligent, rendering it liable for actual damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

91.     Plaintiff is entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to § 1681o.

WHEREFORE, Plaintiff, WHITNEY MARIE HOUSE, respectfully requests that this Court award actual damages against Defendant, EXPERIAN INFORMATION SOLUTIONS, INC.; award Plaintiff her attorney's fees and costs; award pre-judgment and post-judgment interest at the legal rate; enjoinder from further violations of these parts; and such other such relief the Court may deem just and proper.

**COUNT IV**
**Violation of 15 U.S.C. § 1681i as to**
**Defendant, Experian Information Solutions, Inc. (Willful)**

92.     Plaintiff re-alleges and incorporates paragraphs one (1) through sixty-four (64) above as if fully stated herein.

93.     After receiving Plaintiff's disputes, Experian violated 15 U.S.C. § 1681i by: (i) failing to delete inaccurate information in Plaintiff's credit file after receiving notice of such inaccuracies; (ii) failing to conduct a lawful and reasonable reinvestigation into Plaintiff's disputes; (iii) failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file; (iv) failing to review and consider all relevant information submitted by Plaintiff in the disputes; and (v) relying upon verification from a source it has to know is unreliable.

94.     Despite the large amount of information and documentation produced by Plaintiff demonstrating the inaccurate reporting, Experian failed to conduct independent

investigations into Plaintiff's disputes and simply transferred the duty to investigate to the furnisher(s).

95.    Plaintiff provided Experian with the information it needed to confirm that she was a victim of identity theft. Experian ignored this information and failed to conduct a thorough investigation into her disputes or otherwise make her credit file accurate.

96.    As a direct result of this conduct, action and/or inaction of Experian, Plaintiff suffered damage, including without limitation, loss of the ability to benefit from lower interest rates; loss of time; financial loss; physical injury; emotional distress; and mental and emotional pain stemming from the stress, anguish, humiliation, and apprehension in applying for credit and the damages otherwise outlined in this Complaint.

97.    The conduct, action, and/or inaction of Experian was willful, rendering it liable for actual or statutory damages and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

98.    Plaintiff is entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to § 1681n.

WHEREFORE, Plaintiff, WHITNEY MARIE HOUSE, respectfully requests that this Court award actual or statutory damages and punitive damages against Defendant, EXPERIAN INFORMATION SOLUTIONS, INC.; award Plaintiff her attorney's fees and costs; award pre-judgment and post-judgment interest at the legal

rate; enjoinder from further violations of these parts; and such other such relief the Court may deem just and proper.

## COUNT V
### Violation of 15 U.S.C. § 1681e(b) as to
### Defendant, Trans Union LLC (Negligent)

99.    Plaintiff re-alleges and incorporates paragraphs one (1) through sixty-four (64) above as if fully stated herein.

100.    Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning Plaintiff.

101.    Trans Union allowed for furnisher(s) to report inaccurate and erroneous accounts and information to Plaintiff's credit file.

102.    Upon information and belief, Trans Union does not allow its representatives to call consumers, like Plaintiff, during the dispute process or call witnesses with knowledge about the dispute.

103.    Trans Union selects to just parrot the information provided by the Furnisher and to avoid conducting re-investigations.

104.    Trans Union chooses the illegitimate parroting of information despite consumers (like Plaintiff) providing ample evidence.

105.    Trans Union violated its own policies and procedures by not deleting account(s) when Plaintiff provided them with the police report filed with the Auburndale Police Department, which contained sworn testimony of the fraud.

106.   As a result of this conduct, action, and inaction of Trans Union, Plaintiff suffered damage, including without limitation, loss of the ability to benefit from lower interest rates; loss of time; financial loss; physical injury; emotional distress; and mental and emotional pain stemming from the stress, anguish, humiliation, and apprehension in applying for credit and the damages otherwise outlined in this Complaint.

107.   The conduct, action, and/or inaction of Trans Union was negligent, rendering it liable for actual damages, in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

108.   Plaintiff is entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff, WHITNEY MARIE HOUSE, respectfully requests that this Court award actual damages against Defendant, TRANS UNION LLC; award Plaintiff her attorney's fees and costs; award pre-judgment and post-judgment interest at the legal rate; enjoinder from further violations of these parts; and such other such relief the Court may deem just and proper.

### COUNT VI
### Violation of 15 U.S.C. § 1681e(b) as to
### Defendant, Trans Union LLC (Willful)

109.   Plaintiff re-alleges and incorporates paragraphs one (1) through sixty-four (64) above as if fully stated herein.

110.   Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning Plaintiff.

111.   Trans Union allowed for furnisher(s) to report inaccurate and erroneous accounts and information to Plaintiff's credit file.

112.   Upon information and belief, Trans Union does not allow its representatives to call consumers, like Plaintiff, during the dispute process or call witnesses with knowledge about the dispute.

113.   Trans Union selects to just parrot the information provided by the Furnisher and to avoid conducting re-investigations.

114.   Trans Union chooses the illegitimate parroting of information despite consumers (like Plaintiff) providing ample evidence.

115.   Trans Union violated its own policies and procedures by not deleting account(s) when Plaintiff provided them with the police report filed with the Auburndale Police Department, which contained sworn testimony of the fraud.

116.   As a result of this conduct, action, and inaction of Trans Union, Plaintiff suffered damage, including without limitation, loss of the ability to benefit from lower interest rates; loss of time; financial loss; physical injury; emotional distress; and mental and emotional pain stemming from the stress, anguish, humiliation, and apprehension in applying for credit and the damages otherwise outlined in this Complaint.

117.    The conduct, action, and/or inaction of Trans Union was willful, rendering it liable for actual or statutory damages and punitive damages, in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

118.    Plaintiff is entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

WHEREFORE, Plaintiff, WHITNEY MARIE HOUSE, respectfully requests that this Court award actual or statutory damages and punitive damages against Defendant, TRANS UNION LLC; award Plaintiff her attorney's fees and costs; award pre-judgment and post-judgment interest at the legal rate; enjoinder from further violations of these parts; and such other such relief the Court may deem just and proper.

### COUNT VII
### Violation of 15 U.S.C. § 1681i as to
### Defendant, Trans Union LLC (Negligent)

119.    Plaintiff re-alleges and incorporates paragraphs one (1) through sixty-four (64) above as if fully stated herein.

120.    After receiving Plaintiff's disputes, Trans Union violated 15 U.S.C. § 1681i by: (i) failing to delete inaccurate information in Plaintiff's credit file after receiving notice of such inaccuracies; (ii) failing to conduct a lawful and reasonable reinvestigation into Plaintiff's disputes; (iii) failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file; (iv) failing to review and consider all relevant information submitted by Plaintiff in the disputes; and (v) relying upon verification from a source it has to know is unreliable.

121.    Despite the large amount of information and documentation produced by Plaintiff demonstrating the inaccurate reporting, Trans Union failed to conduct independent investigations into Plaintiff's disputes and simply transferred the duty to investigate to the furnisher(s).

122.    Plaintiff provided Trans Union with the information it needed to confirm that she was a victim of identity theft. Trans Union ignored this information and failed to conduct a thorough investigation into her disputes or otherwise make her credit file accurate.

123.    As a direct result of this conduct, action and/or inaction of Trans Union, Plaintiff suffered damage, including without limitation, loss of the ability to benefit from lower interest rates; loss of time; financial loss; physical injury; emotional distress; and mental and emotional pain stemming from the stress, anguish, humiliation, and apprehension in applying for credit and the damages otherwise outlined in this Complaint.

124.    The conduct, action, and/or inaction of Trans Union was negligent, rendering it liable for actual damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

125.    Plaintiff is entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to § 1681o.

WHEREFORE, Plaintiff, WHITNEY MARIE HOUSE, respectfully requests that this Court award actual damages against Defendant, TRANS UNION LLC; award

Plaintiff her attorney's fees and costs; award pre-judgment and post-judgment interest at the legal rate; enjoinder from further violations of these parts; and such other such relief the Court may deem just and proper.

<u>**COUNT VIII**</u>
**Violation of 15 U.S.C. § 1681i as to**
**Defendant, Trans Union LLC (Willful)**

126.    Plaintiff re-alleges and incorporates paragraphs one (1) through sixty-four (64) above as if fully stated herein.

127.    After receiving Plaintiff's disputes, Trans Union violated 15 U.S.C. § 1681i by: (i) failing to delete inaccurate information in Plaintiff's credit file after receiving notice of such inaccuracies; (ii) failing to conduct a lawful and reasonable reinvestigation into Plaintiff's disputes; (iii) failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file; (iv) failing to review and consider all relevant information submitted by Plaintiff in the disputes; and (v) relying upon verification from a source it has to know is unreliable.

128.    Despite the large amount of information and documentation produced by Plaintiff demonstrating the inaccurate reporting, Trans Union failed to conduct independent investigations into Plaintiff's disputes and simply transferred the duty to investigate to the furnisher(s).

129.    Plaintiff provided Trans Union with the information it needed to confirm that she was a victim of identity theft. Trans Union ignored this information and failed

to conduct a thorough investigation into her disputes or otherwise make her credit file accurate.

130.    As a direct result of this conduct, action and/or inaction of Trans Union, Plaintiff suffered damage, including without limitation, loss of the ability to benefit from lower interest rates; loss of time; financial loss; physical injury; emotional distress; and mental and emotional pain stemming from the stress, anguish, humiliation, and apprehension in applying for credit and the damages otherwise outlined in this Complaint.

131.    The conduct, action, and/or inaction of Trans Union was willful, rendering it liable for actual or statutory damages and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

132.    Plaintiff is entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to § 1681n.

WHEREFORE, Plaintiff, WHITNEY MARIE HOUSE, respectfully requests that this Court award actual or statutory damages and punitive damages against Defendant, TRANS UNION LLC; award Plaintiff her attorney's fees and costs; award pre-judgment and post-judgment interest at the legal rate; enjoinder from further violations of these parts; and such other such relief the Court may deem just and proper.

## COUNT IX
### Violation of 15 U.S.C. § 1681 s-2(b) as to
### Defendant, Lendmark Financial Services, LLC (Negligent)

133.    Plaintiff re-alleges and incorporates paragraphs one (1) through sixty-four (64) above as if fully stated herein.

134.    Lendmark furnished inaccurate account information to Experian and Trans Union and through those CRAs to all of Plaintiff's potential lenders.

135.    After receiving Plaintiff's disputes, Lendmark violated 15 U.S.C. § 1681s-2(b) by (i) failing to fully and properly investigate Plaintiff's dispute of the erroneous account; (ii) failing to review all relevant information regarding same; (iii) failing to accurately respond to the Experian and Trans Union; and (iv) failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the representations to the consumer reporting agency.

136.    Plaintiff provided all the relevant information and documents necessary for Lendmark to have identified that the account was erroneous.

137.    Lendmark did not have any reasonable basis to believe that Plaintiff was responsible for the account reported in its representations. It also had sufficient evidence by which to have verified that Plaintiff was not the responsible party, including information provided to Lendmark by Plaintiff in connection with her disputes of the account in question. Instead, it knowingly chose to follow procedures which did not review, confirm, or verify the account belonged to Plaintiff. Further, even if it would attempt to plead ignorance, it had the evidence and information with which to confirm and recognize that Plaintiff was a victim of identity theft.

138.    Lendmark violated 15 U.S.C. § 1681s-2(b) by continuing to furnish inaccurate information to the CRAs after it had been notified that the information it was furnishing was inaccurate.

139.    As a direct result of this conduct, action, and/or inaction of Lendmark, Plaintiff suffered damages, including without limitation, loss of the ability to benefit from lower interest rates; loss of time; financial loss; physical injury; emotional distress; and mental and emotional pain stemming from the stress, anguish, humiliation, and apprehension in applying for credit, and the damages otherwise outlined in this Complaint.

140.    The conduct, action, and inaction of Lendmark was negligent, rendering it liable for actual damages, in an amount to be determined by the Court pursuant to 15 USC § 1681o.

141.    Plaintiff is entitled to recover costs and attorney's fees from Lendmark in an amount to be determined by the Court pursuant to 15 USC § 1681o.

WHEREFORE, Plaintiff, WHITNEY MARIE HOUSE, respectfully requests that this Court award actual damages against Defendant, LENDMARK FINANCIAL SERVICES, LLC; jointly and severally; award Plaintiff her attorneys' fees and costs; award pre-judgment and post-judgment interest at the legal rate; enjoinder from further violations of these parts; and grant all such additional relief as the Court deems appropriate.

## COUNT X
### Violation of 15 U.S.C. § 1681 s-2(b) as to
### Defendant, Lendmark Financial Services, LLC (Willful)

142.    Plaintiff re-alleges and incorporates paragraphs one (1) through sixty-four (64) above as if fully stated herein.

143.    Lendmark furnished inaccurate account information to Experian and Trans Union and through those CRAs to all of Plaintiff's potential lenders.

144.    After receiving Plaintiff's disputes, Lendmark violated 15 U.S.C. § 1681s-2(b) by (i) failing to fully and properly investigate Plaintiff's dispute of the erroneous account; (ii) failing to review all relevant information regarding same; (iii) failing to accurately respond to the Experian and Trans Union; and (iv) failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the representations to the consumer reporting agency.

145.    Plaintiff provided all the relevant information and documents necessary for Lendmark to have identified that the account was erroneous.

146.    Lendmark did not have any reasonable basis to believe that Plaintiff was responsible for the account reported in its representations. It also had sufficient evidence by which to have verified that Plaintiff was not the responsible party, including information provided to Lendmark by Plaintiff in connection with her disputes of the account in question. Instead, it knowingly chose to follow procedures which did not review, confirm, or verify the account belonged to Plaintiff. Further, even if it would

attempt to plead ignorance, it had the evidence and information with which to confirm and recognize that Plaintiff was a victim of identity theft.

147.   Lendmark violated 15 U.S.C. § 1681s-2(b) by continuing to furnish inaccurate information to the CRAs after it had been notified that the information it was furnishing was inaccurate.

148.   As a direct result of this conduct, action, and/or inaction of Lendmark, Plaintiff suffered damages, including without limitation, loss of the ability to benefit from lower interest rates; loss of time; financial loss; physical injury; emotional distress; and mental and emotional pain stemming from the stress, anguish, humiliation, and apprehension in applying for credit, and the damages otherwise outlined in this Complaint.

149.   The conduct, action, and inaction of Lendmark was willful, rendering it liable for actual or statutory damages and punitive damages, in an amount to be determined by the Court pursuant to 15 USC § 1681n.

150.   Plaintiff is entitled to recover costs and attorney's fees from Lendmark in an amount to be determined by the Court pursuant to 15 USC § 1681n.

WHEREFORE, Plaintiff, WHITNEY MARIE HOUSE, respectfully requests that this Court award actual or statutory damages and punitive damages against Defendant, LENDMARK FINANCIAL SERVICES, LLC; award Plaintiff her attorney's fees and costs; award pre-judgment and post-judgment interest at the legal

rate; enjoinder from further violations of these parts; and such other such relief the Court may deem just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, WHITNEY MARIE HOUSE, respectfully requests that this Court award judgment for actual, statutory, compensatory, and punitive damages against Defendants, EXPERIAN INFORMATION SOLUTIONS, INC.; TRANS UNION LLC; and LENDMARK FINANCIAL SERVICES, LLC, jointly and severally; attorneys' fees and costs; prejudgment and post-judgment interest at the judgment rate; and such other relief the Court deems just and proper.

DATED this 30th day of May 2025.

Respectfully submitted,

*/s/ Octavio Gomez*
Octavio "Tav" Gomez, Esq.
Florida Bar #: 0338620
Georgia Bar #: 617963
Pennsylvania Bar #: 325066
The Consumer Lawyers PLLC
501 E. Kennedy Blvd, Suite 610
Tampa, Florida 33602
Cell: (813) 299-8537
Facsimile: (844) 951-3933
Tav@theconsumerlawyers.com

***/s/ Frank H. Kerney, III, Esq.***
Frank H. Kerney, III, Esq.
Florida Bar No.: 88672
Tennessee Bar No.: 035859
The Consumer Lawyers PLLC
501 E. Kennedy Blvd, Ste 610
Tampa, Florida 33602
Telephone: 844.855.9000
Facsimile: 844.951.3933
Frank@theconsumerlawyers.com
*Attorney for Plaintiff*